VERGEL TEMPLETON, RESPONDENT, v. STANDARD LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT.—140 S. W. (2d) 726.

Kansas City Court of Appeals. May 20, 1940.

*H. P. Lauf* and *John O. Bond* for appellant.

*Irwin, Bushman & Buchanan* for respondent.

KEMP, J.—This is a suit on a policy of life insurance, issued November 28, 1931, to Velda Templeton, the wife of plaintiff who was named as beneficiary therein. The suit was instituted in the Circuit Court of Cole County, and upon a change of venue was tried in the Circuit Court of Osage County. The petition is in conventional form.

The answer raises the sole defense that the policy is void for the reason that the insured in her application for insurance "did fraudulently and falsely state . . . that she had never had any surgical operation," and that her last illness, which was due to childbirth, lasted for only fifteen days, when in fact approximately six months prior to the time insured made said application for insurance she "had undergone a Caesarean operation on account of placenta previa with hemorrhage, and that the nature of the operation was the removal of an unborn baby by cutting into her abdominal cavity." The answer alleges that the insured's statement that she had not been operated upon was a material representation, in that the operation had six months prior to the issuance of the policy was a contributing cause of her death in December, 1935. Prior to suit, defendant denied liability and tendered to plaintiff all of the assessments paid on the policy, which tender plaintiff refused to accept.

Plaintiff filed reply, wherein he denied that the insured had made any false statements at the time her application for insurance was made, and alleged that the insured had, at that time, stated to defendant's agent that she had had a Caesarean operation, and the length of her confinement on account thereof, and that at the time the agent filled out the application he had full knowledge of these facts; that the insured signed said application without knowing that the agent had misstated the answers and information given by the insured; that the defendant had full knowledge of the actual facts with respect to said operation prior to the issuance of the policy, and is therefore estopped from asserting that the insured made any misrepresentation in respect thereto; that said Caesarean operation did not contribute in any way to the death of the insured.

Upon a trial of the case on July 25, 1939, the jury returned a verdict in favor of the plaintiff for the face amount of the policy, plus accrued interest thereon, aggregating $1246.47. Following an adverse ruling on its motion for new trial, defendant duly prosecuted this

appeal. We shall continue to refer to appellant as defendant, and to respondent as plaintiff.

The essential facts disclosed by the record are as follows: The policy was issued November 28, 1931. Prior thereto, and on May 31, 1931, the insured underwent a Caesarean operation. In this operation an incision six or seven inches long was made in the forward or anterior portion of the uterus, through which the child was taken. The insured made an "uneventful recovery." When her physician "checked her up" before finally discharging her, she stated to him she was feeling better than she had for years. The portion of the application which furnishes the basis for the misrepresentation charged in the answer is as follows:

"Q. When last sick? A. May 31, 1931.

"Q. Nature of last sickness? A. Childbirth.

"Q. How long sick? A. Fifteen days. . . .

"Q. Have you had any surgical operations, serious illness or accident? If yes, give date, duration and name of ailment. A. No."

Defendant's agent who took the application for the policy of insurance here involved was not called as a witness, and the only testimony as to what transpired in connection with the application is that of the plaintiff. The plaintiff testified that Lyford Robbins, an agent for the defendant company, came to his home in the early evening in November, 1931, and introduced the subject of insurance, stating that he had previously seen plaintiff's wife, and that he could sell her some insurance provided plaintiff would take out a policy; that she wanted to carry insurance in the same company that plaintiff did. After some general discussion, plaintiff and his wife each decided to take out a policy, and the agent wrote up separate applications for each. Plaintiff was present during all the conversation had between the agent and the insured. The agent read to plaintiff's wife the questions from an application blank which she later signed, and upon receiving her answers to the respective questions, the agent wrote down what the plaintiff assumed to be the answers of the insured. Neither the insured nor the plaintiff was sitting where they could see what was written. Defendant's agent neither read over the answers to the insured nor gave the application to her to read after he had written down the answers. Plaintiff stated that after the agent "had filled out the questionnaire," he said to the insured, "Sign here, you will sign your name here, and your application is then ready to go in for a policy." Plaintiff was asked specifically if the insured was asked as to whether or not she had had an operation. Plaintiff stated that this question was asked, and that there was some discussion about it, and that he, plaintiff, stated to the agent "that I was afraid my wife couldn't get insurance because of this Caesarean operation, and I asked him if he thought that his company would insure her.

"Q. What was his answer to that? . . . A. Well, his answer was that all we could do, we could make out this application, and the insurance company could accept or reject it, the application for the policy."

Plaintiff testified that, "the first time I ever read that policy was when the insurance company tried to tell me that I couldn't collect on it," and that prior to this time he did not know that the answer to the question as to the operation had been erroneously recorded in the application.

On the question as to whether or not the Caesarean operation, or the condition resulting therefrom, contributed to the cause of the death of the insured, the evidence was conflicting. The insured's death on December 3, 1935, followed by a few days an operation wherein the uterus was removed. Dr. Bryan, who performed the latter operation, testified that he found a rupture of the uterus at the back or posterior portion thereof, "up at the right cornea of the uterus," with a four or five months pregnancy and the fetus dead. He stated that this tear was "just about as far away from the old scar (from the prior Caesarean operation) as it could be." He ascribed her death to "secondary hemorrhage and ruptured uterus." He testified he didn't see how the prior operation or the condition resulting therefrom could have contributed in any way to the condition from which the insured died—that in his opinion it did not. In support of this opinion, he stated that any weakening of the wall of the uterus as a result of the prior operation would have been along the edges of the scar tissue at the line of incision which was at the front portion of the uterus; that the operation and the resulting scar at the front of the uterus could not possibly weaken the posterior wall where the rupture occurred.

Dr. R. P. Dorris, a surgeon of Jefferson City, likewise testified, in answer to a hypothetical question, that in his opinion the scar resulting from an incision at the front portion of the uterus would not weaken the back portion of the uterus where the fatal rupture occurred, and that in his opinion the prior operation did not contribute to the cause of death.

Testifying on behalf of the defendant, Dr. L. A. Marty, who performed the Caesarean operation upon insured in 1931, and Dr. Herbert I. Taylor of Jefferson City, in response to hypothetical questions propounded to them, each expressed the opinion that the prior operation contributed to the condition from which the insured died.

Defendant first contends that the court erred in overruling its demurrer at the close of all the evidence, in that "plaintiff's evidence conclusively showed that the plaintiff-beneficiary, the insured, and the agent of the insured were in fraud and collusion and concealed the fact that the insured had undergone a Caesarean operation, and concealed the fact that insured had a diseased uterus, when these concealed

conditions finally resulted in insured's death." It is then urged that "where there is fraud and collusion between the agent of the insurer and the applicant in concealing applicant's state of health, and false answers are written in the application with the knowledge of the insured and with the knowledge of the plaintiff-beneficiary, the knowledge of the agent is not imputable to the insurer."

This is undoubtedly the well-settled rule. The decisions in this State on this point uniformly so hold. [McGee v. Capital Mutual Ins. Assn., 116 S. W. (2d) 204; Emery v. New York Life Ins. Co., 295 S. W. 571, 316 Mo. 1292.] In Zeilman v. Central Mutual Ins. Assn., 22 S. W. (2d) 88, l. c. 91, it is held that: "collusion between the agent and the applicant will be presumed without direct evidence thereof where the agent, with the knowledge of the applicant, inserts false answers to the questions, knowing them to be false, and forwards the application to the insurer."

But this rule has no application to the facts in this case.

In the first place, the answer contains no allegation of a fraudulent collusion between the insured and the defendant's agent. Defendant's answer does not charge its agent with fraud or collusion with the insured. It charges *only the insured* with fraud in the concealment of a material fact. But even if this issue had been raised by the pleadings, the record is barren of any evidence in support of collusion between the insured and defendant's agent. The uncontradicted and unimpeached testimony of the plaintiff is that the insured truthfully answered the question with respect to any prior operation by stating that she had had an operation and by making full disclosure as to its character; that the agent filled in the answers to the questions in the application blank, and that neither the insured nor the plaintiff at any time saw what he wrote; that the insured signed the application without any knowledge that her answers had been falsely recorded in the application by defendant's agent.

Under such circumstances, the knowledge of the agent with respect to the incorrectness of the answer as written in the application is imputed to the defendant, and the defendant, by thereafter issuing the policy and accepting premiums or assessments, will be deemed to have waived the truthfulness of the answers as written in the application. This was so ruled in the case of Coleman v. Central Mutual Ins. Assn., 52 S. W. (2d) 22, l. c. 23, wherein the facts were closely analogous to the facts in the case at bar. The knowledge which a soliciting agent of an insurance company receives and acts upon in connection with an application for insurance is binding upon the company "absent fraud or collusion between such agent and those seeking the insurance." And if a defendant company seeks to have declared void its policy of insurance on the ground of fraud and misrepresentation in the procurement thereof, the burden is upon it to prove the facts constituting such fraud and misrepresentation.

Byrne v. Prudential Ins. Co. of America, 79 S. W. (2d) 789, l. c. 790, and decision of Supreme Court in same case on *certiorari*, reported in 88 S. W. (2d) 344. Thus, under the evidence in the instant case, the question of the alleged fraud of the insured in procuring the policy was for the jury, from which it follows that the trial court properly overruled the demurrer to the evidence.

The demurrer in this case was properly overruled for another reason. Section 5732, R. S. Mo. 1929, Mo. Stat. Ann., Sec. 5732, page 4373, provides that:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable and whether it so contributed in any case shall be a question for the jury."

Under the provisions of this statute, the mere fact that a misrepresentation was made in procuring the policy does not necessarily render the policy void. Even if it be assumed, contrary to the plaintiff's uncontradicted testimony, that the insured procured the policy by misrepresenting the facts as to a prior operation, there was substantial evidence to the effect that the matter alleged to have been misrepresented by the insured did not actually contribute to the cause of insured's death. Thus, on this point, under the plain terms of the statute *supra*, a jury question was presented. [Aetna Life Ins. Co. v. Daniel, 42 S. W. (2d) 584, l. c. 587; Schreiber v. Central Mutual Ins. Assn., 108 S. W. (2d) 1052, l. c. 1057.] It is alleged that the defendant company was organized upon the assessment plan. The misrepresentation statute set out above applies to assessment companies as well as to old line companies. [Yancey v. Central Mutual Ins. Assn., 77 S. W. (2d) 149, l. c. 155.]

Instruction 1, given on behalf of plaintiff, is as follows:

"The Court instructs the jury that if you find and believe from the evidence that Lyford Robbins was the agent and representative of the defendant corporation, and as such propounded to Velda Roena Templeton the questions contained in the application; and if you find and believe from the evidence that said Velda Roena Templeton made truthful answers to all of said questions, and that Lyford Robbins, as agent of the defendant, wrote in the application untrue answers to any of the questions contained in the application; and that said Velda Roena Templeton signed the application with no knowledge of what answers had been written in the application, then by these facts, if you believe them to be facts, the defendant waived the untruthfulness of all of said answers."

Defendant charges that this instruction is erroneous in that it "limited the innocence of the false answers in application to the

applicant in imputing the agent's knowledge to the insurer but should have also required that the plaintiff-beneficiary be innocent that agent placed false answers in the application." There is no merit in this contention.

In the first place, the question of plaintiff's fraud or collusion is not raised by the pleadings. As heretofore pointed out, the answer charges only the insured with fraud and misrepresentation of a material fact. The instruction as to the point sought to be covered, thereby is as broad and inclusive as the issue of fraud raised by the pleadings. In the second place, defendant's theory of defense, on the ground of fraud, was submitted in its Instructions "A" and "D," in each of which the alleged fraud of the *insured only* was hypothesized. In neither of these instructions did defendant submit a defense predicated on the fraud or collusion or guilty knowledge of false answers of the plaintiff-beneficiary. Defendant's Instructions "A" and "D" are in harmony with, and are no broader than, Instruction 1 given on behalf of plaintiff. Thus, even though plaintiff's Instruction 1 were subject to the criticism leveled against it, defendant is in no position to take advantage of an error in which it joined. [Lange v. Missouri Pacific R. Co., 208 Mo. 458, l. c. 475.]

Defendant assigns as error the giving of Instruction 2, which is as follows:

"The Court instructs the jury that under the law and the evidence in this case the fact that it was stated in the application for insurance introduced in evidence, that the insured had never had any surgical operation and stated the nature of her last illness to be childbirth and lasted only for fifteen days, if so made, would not be a valid reason for refusing to pay the policy sued upon, unless the jury believe and find from the evidence that the matters misrepresented shall have actually contributed to or caused the death of the insured."

It is contended that this instruction was erroneously given "for the reason that plaintiff's own evidence conclusively showed that the Caesarean operation which the insured had suffered and concealed, and which plaintiff had concealed from the defendant, was a contributing cause of the death of the insured, and there was no substantial evidence on which to base said instruction." We have ruled this point against the defendant in passing upon the demurrer to the evidence. We are convinced that the evidence on this point made a case for the jury. We think the case was fairly tried and fairly submitted. The judgment is therefore affirmed. All concur.