STATE OF MISSOURI EX REL. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a Corporation, Relator, v. EWING C. BLAND, NICK T. CAVE, and SAMUEL A. DEW, Judges of the Kansas City Court of Appeals.—No. 39207.—185 S. W. (2d) 654.

Division Two, February 5, 1945.

Rehearing Denied or Motion to Transfer to Banc
Overruled, March 5, 1945.

*Henry I. Eager* and *Michaels, Blackmar, Newkirk, Eager & Swanson* for relator.

*Clarence C. Chilcott* for respondents.

960

TIPTON, J.—This is an original proceeding in certiorari to review respondents' opinion in the case of The Prudential Insurance

Company of America against John M. Goldsmith to recover on a disappearance bond executed by him as a surety. The judgment of the trial court was in favor of relator. That judgment was reversed by the respondents' opinion which is reported in 181 S. W. (2d) 201.

The essential facts found by the respondents are: Relator issued three policies of insurance upon the life of James A. Goldsmith. The largest policy named Nellie Goldsmith, mother of insured, as the beneficiary. The other two policies were of the industrial type, containing a so-called "facility of payment" clause. Each of these policies was payable only ▮▮▮ upon receipt of "due proof of the death of the insured." In 1932, since the insured had not been heard from for more than seven years, a presumption of his death arose, and a claim was made upon the relator by the mother of the insured. Relator had doubts that the insured was dead, but offered to pay the claim upon condition that it be furnished a bond. Nellie Goldsmith offered her son (defendant) and daughter as sureties thereon, and plaintiff accepted. The bond was executed on March 3, 1933, and full payment of the policies as a death claim was made by relator to Nellie Goldsmith by checks dated March 20 and 21, 1933. In March, 1941, defendant wrote relator that his brother was alive and asked to be "released" from the bond. The relator verified the fact that insured was alive and at various times requested reimbursement for the money it had paid on the policies both from the principal and sureties. These requests were refused.

The policies provided for extended insurance, paid up, and cash surrender values. The last amounted to the sum of $546.63 at the time the policies were paid. Insured had never elected any option under the policies and had never made any claim under the policies. He could change the beneficiary at any time in the largest policy.

The bond was executed upon a form furnished by the relator, and it provided:

"Whereas, the said The Prudential Insurance Company of America (plaintiff) is about to pay to the said bounden Nellie Goldsmith the sum of One Thousand Four Hundred Ninety ($1,490.00) Dollars, . . . said payment being made by said Company without requiring due proof of death provided for by the terms of said policies, but in reliance upon the truth of representations made to it by the said Nellie Goldsmith . . . that the said James A. Goldsmith is dead.

"Now, therefore, the condition of this obligation is such that if it shall hereafter be proven to the satisfaction of the said Company that the said James A. Goldsmith is alive, and if upon demand made the above bounden parties, or any or either of them, their heirs, executors, administrators, and assigns shall fully indemnify and save harmless said Company from all loss, expense and damage by it

incurred by reason of said payment then this obligation shall be null and void, otherwise to remain in full force and virtue in law.''

The only breach of the conditions of the bond alleged in relator's petition is that relator was proved to be alive and that Nellie Goldsmith, and her sureties, refused, upon demand, to repay relator the amount of money paid by it to Nellie Goldsmith.

It was the defendant's contention that relator's petition failed to state a cause of action, that his demurrer to the evidence should have been sustained, and that the trial court erred in entering judgment against him.

In ruling the case, respondent reversed judgment of the trial court, holding that the petition failed to state a cause of action. The reasons assigned were that the bond was ambiguous and since the defendant was a gratuitous surety, the bond should be strictly construed in his favor; that in ''construing bonds of this character it is always the rule that it will not be given a retroactive effect unless, by its terms, it provides that it is to have such effect; . . . '' and that ''There is a distinction between a bond providing for indemnity against loss, expense and damage, and one for indemnity against liability. If there is an ambiguity in the terms of the bond it will be construed in favor of defendant and as providing indemnity against loss, expense and damage, plaintiff [relator] having provided the form.'' Respondents' opinion further said that ''Plaintiff [relator] does not allege, or attempt to prove, any loss, damage or expense suffered by it, within the meaning of the bond. The petition fails to state a cause of action, and the court should have rendered a judgment for the defendant.''

■ '' 'On a writ of certiorari to an appellate court, the determination of error, under our decisions, is limited to the finding of a conflict between the Court of Appeals' opinion and the latest ruling opinion of this court on the subject; either as to a general principle of law announced, or as to a ruling under a like, analogous, or similar state of facts. The purpose of certiorari is to secure uniformity in opinions and harmony in the law. State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 253 S. W. 1014.' State ex rel. Himmelsbach v. Becker, 337 Mo. 341, 85 S. W. (2d) 420, l. c. 421.

''On certiorari we are limited to the facts as found in the opinion by the court ■ of appeals and to the issues presented to that court. State ex rel. Silverforh v. Smith (Mo. Sup.), 43 S. W. (2d) 1054.'' State ex rel. Emery, Bird, Thayer Dry Goods Co. v. Shain et al., 348 Mo. 650, 154 S. W. (2d) 775, l. c. 776.

■ Relator does not contend that we have ruled a like, analogous or similar state of facts, but does contend that respondents' opinion does contravene our decision as to a general principle of law, in that respondents, in construing the bond in question, failed to give the

language found in the bond its plain, ordinary, and usual meaning and, therefore, it is not open to construction.

If the terms of the bond are ambiguous, then the respondents had a right to construe it even if such construction is erroneous, because we have never construed a like or similar bond. "The Court of Appeals, like ourselves, has 'jurisdiction' to decide wrong as well as to decide right." State ex rel. Kansas City Theological Seminary v. Ellison et al., 216 S. W. 967, l. c. 969, 970. On the other hand, if the bond by its terms is unambiguous, then respondents' opinion in construing the bond and giving it a different construction from its plain meaning conflicts with our rulings where we held that the words and phrases in all documents must be given their plain, ordinary, and usual meanings. Worthington Drainage District v. Township of Elm, Putman County, 339 Mo. 270, 96 S. W. (2d) 374; Paisley v. Lucas, 346 Mo. 827, 143 S. W. (2d) 262. Where there is no ambiguity, there is no room for construction. Unequivocal language in a written document must be given its plain, ordinary, and usual meaning. State ex rel. Prudential Insurance Company of America v. Shain et al., 344 Mo. 623, 127 S. W. (2d) 675.

The language in this bond is unambiguous. It provides that the bounden parties shall fully indemnify and save harmless relator from "all loss, expenses and damage it [relator] incurred by reason of said payment," if the insured be proved to be alive and demand was made by relator. There is no doubt that the insured was proved to be alive after the execution of the bond and the payment of the money by relator to Nellie Goldsmith. In fact, it is conceded by all parties he was alive. The relator did not owe Nellie Goldsmith anything on these life insurance policies until James A. Goldsmith, the insured, died, and only then upon due proof of his death. Nellie Goldsmith represented to relator that the insured was dead. This representation was later proved to be false. When relator paid her the policies on the representation that the insured was dead it sustained a "loss." In other words, the relator did not owe Nellie Goldsmith anything on the policies at the time the payment was made. When one pays his obligation, he sustains no loss; but if one pays a sum of money on a false representation that he owe that sum, then he has sustained a loss.

We agree with respondent that the liability of a gratuitous surety is strictissimi juris, and in construing his liability on such a bond, the rule is that it will not be given a retroactive effect unless, by its terms, it provides that it is to have such effect. See State to Use of Lancaster v. Jones, 89 Mo. 470, 1 S. W. 355; State ex rel. Chatham National Bank v. Finn, 98 Mo. 532, 11 S. W. 994, 14 Am. St. Rep. 654. However, the language of this bond did give it a retroactive effect. Note the following clause: "the above bounden parties . . . shall fully indemnify and save harmless said company from all loss . . .

by it *incurred* by reason of said payment . . . '' (Italics ours.) The word. ''incurred'' is used in the past tense, giving it a retroactive effect. The use of the words ''by reason of said payment'' means the loss relator sustained by paying Nellie Goldsmith the sum of One Thousand Four Hundred Ninety ($1,490.00) Dollars that relator did not owe.

Respondents were correct in ruling the bond to be an indemnifying bond against damage and not liability; but as we have already said, the relator sustained a loss when it paid Nellie Goldsmith One Thousand Four Hundred Ninety ($1,490.00) Dollars on these policies when the insured was alive. The bond was breached when it was proved that James A. Goldsmith, the insured, was alive and relator made a demand under the bond. Relator's petition, therefore, did state a cause of action.

In giving the language of the bond such a construction that it did not have a retroactive effect, the respondents caused conflict with our decisions that unambiguous language must be given its plain meaning and enforced as written. Respondents' opinion should be quashed. It is so ordered. All concur.