MACALCO, INC., a corporation, and Mary J. McDowell, Administratrix of the Estate of Orville McDowell, Deceased, Plaintiffs-Respondents,

v.

GULF INSURANCE COMPANY, a corporation, Defendant-Appellant-Respondent,

and

The Aetna Casualty and Surety Company, a corporation, Defendant-Appellant.

Nos. 9701, 9702.

Missouri Court of Appeals, Springfield District.

April 11, 1977.

Motions for Rehearing or Transfer Denied April 29, 1977.

Application to Transfer Denied June 14, 1977.

B. H. Clampett, William A. R. Dalton, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for plaintiffs-respondents.

Glenn A. Burkart, Mann, Walter, Burkart, Weathers & Walter, Springfield, for defendant-appellant-respondent.

Bob J. Keeter, Schroff, Keeter & Glass, Inc., Springfield, for defendant-appellant.

Before STONE, P. J., and HOGAN and TITUS, JJ.

TITUS, Judge.

Macalco, Inc. (Macalco) owned an airplane which crashed in a nighttime flight and was destroyed. At the time of the occurrence, the plane was being piloted by Macalco's president, Orville McDowell (McDowell), and carrying two passengers. All of the occupants perished. When the tragedy happened, Macalco and McDowell were insureds in an aircraft hull and liability policy issued by Gulf Insurance Company (Gulf) and in an excess indemnity (umbrella) policy issued by The Aetna Casualty And Surety Company (Aetna). Gulf denied coverage. Macalco and the administratrix of the estate of the deceased pilot, who had been sued for the wrongful deaths of the passengers, brought this action against Gulf, Aetna and the suing passengers' widows for a declaration of insurance coverages and liabilities. Following a bench trial the court ruled, in specifics to be detailed anon, that the policies afforded coverage for the claims arising from the crash. Gulf and Aetna filed separate appeals which have been consolidated. There is no conflict of consequence in the evidence and much of it is documented.

Gulf's policy provided coverage for (1) bodily injury and property damage liability, (2) medical payments and (3) physical loss of and damage to the airplane. The single limit for bodily injury and property damage liability was stated under "Declarations" to be "$1,000,000 each occurrence See End. # 1". By this endorsement, entitled "Passenger Limits of Liability," it was agreed that $100,000 was Gulf's liability for bodily

injury damage sustained by any one passenger per occurrence or $500,000 for all passengers per occurrence.

In the "Exclusions" section of Gulf's policy is stated: "This policy does not apply: . . . 6. Under coverages [provided by the policy] while the aircraft is in flight and . . . (d) operated by a Student Pilot unless such flight or attempted flight is with the specific advance approval of and under the supervision and control of an F.A.A. Certificated Commercial Instructor Pilot."

Known as the "Pilot Clause" and included in "Part Two" of Gulf's policy under the heading of "Declarations," was the following: "7. Pilots. It is a condition hereof that such 'Flight' coverage as is provided by the policy applies only while the aircraft is being operated by the following specified Pilot(s) while holding proper Certificate(s) and Rating(s) as required by the Federal Aviation Agency for the flight involved:

(a) [x] Orville McDowell or Jack D. Cotton

(b) [ ] Any Student Pilot

(c) [ ] Any Private Pilot or [ ] any Commercial Pilot, who has logged Solo or Pilot in Command flight time of at least: _____ total hours during the past _____ years; _____ hours in Multi-engine aircraft during the past _____; . . . ." [1]

Condition 24 of Gulf's policy stated: "*Misrepresentation and Fraud.* This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstance, whether under the declarations or otherwise, concerning this insurance or the subject thereof, or in case of any fraud, attempted fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after the loss."

The appropriate provisions of Aetna's policy will be set forth later when we consider its appeal.

1. The x appearing in the box after (a) and the names following thereafter were added to the printed form by typewriter.

Gulf's policy and Aetna's policy were written through the insurance agency of Handley-Adams, Inc. Gulf's policy covering the time of the involved crash was the successor to a similar policy Gulf had previously issued to Macalco through the agency. Both Gulf policies were issued on the written applications of Macalco. Mr. Handley of the agency testified he had known McDowell (president of Macalco) for "about a year and a half" before the crash and had served on Macalco's board of directors "for about a year and a half or two years." Handley "handled most of the insurance contracts for" Macalco and "was authorized to sign [the application] by [McDowell] for him." The first application for Gulf's previous policy was signed "Macalco, Inc. By Orville McDowell Pres." Handley said he affixed the signature per McDowell's authorization. The second application was not signed. In both forms the applicant warranted that the information and particulars contained therein were true and complete. Each of the applications represented that McDowell had been certificated or rated as a Private Pilot.

■ Regulations and rules promulgated by government agencies pursuant to delegation of authority from Congress have the force and effect of law and Missouri courts will judicially notice the rules and regulations adopted by such agencies, including those made by the Federal Aviation Agency (FAA). *Fredrick v. Bensen Aircraft Corporation*, 436 S.W.2d 765, 769–770[3, 4] (Mo. App.1968) and authorities there cited. Federal Air Regulations (14 C.F.R.) provide: "§ 61.89(a) A student pilot may not act as pilot in command of an aircraft—(1) That is carrying a passenger; . . . ." Under § 1, "Pilot in Command" is defined as the "pilot responsible for the operation and safety of an aircraft during flight time."

After the crash and in the course of investigating it, Gulf learned for the first time that McDowell, the pilot, did not have an FAA certification as a private pilot but held only a student pilot's certificate. By letter dated about one month after the occurrence, Gulf, in part, wrote to Macalco: "The basis for this Coverage Denial was a breach of the Pilot Warranty (Item 7 of the Declarations). In short, Orville McDowell was not properly rated and certificated for the flight involved. He was a student pilot carrying passengers at the time of the loss. In addition to the above grounds for a Coverage Denial, [Gulf] reserve[s] . . . all other grounds for a coverage denial which may now or later appear under [the] Policy . . . ." Gulf's original answer and counterclaim, among other things, asseverated it was additionally not liable on its policy because of Exclusion 6(d) and that the policy was void (Condition 24) because of the misrepresentation made as to the certification of McDowell as a private pilot. Similar averments were repeated in Gulf's amended counterclaim and its answer to plaintiffs' amended petition.

On the day following the date the Coverage Denial letter was written, Gulf sent Macalco a notice of the cancellation of its policy.[2] There was no evidence to indicate whether or not Gulf had paid or tendered the unearned premium paid on the policy.

The trial court's findings of fact (excluding many facts found which have heretofore been recounted) were: McDowell, at the time of the crash, had approximately 500 logged hours of flying time in single and multi-engine aircraft, but held a student pilot certificate—not a private pilot certificate; neither of the passengers in the crashed craft held an FAA certificate as a commercial instructor pilot and the flight in question was made without the advance

2. Cancellation was provided for in the policy under Condition 23. That condition states: ". . . This policy may be canceled by the company . . . by mailing to the named insured . . . written notice stating when not less than ten days thereafter such cancelation shall be effective. . . . If the compa-

ny . . . cancel[s], earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation. . . ."

approval thereof by, and was not under the supervision or control of, anyone certified by the FAA as a commercial instructor pilot. Nonetheless, the trial court additionally found that "McDowell was properly certificated and rated by the F.A.A. for the flight involved." Also, the court found that no causal connection was shown between McDowell's certification as a student pilot and the crash or between the fact that the flight in question was made without the advance approval thereof by, and was not under the supervision or control of, anyone certificated by the FAA as a commercial instructor pilot and the crash.

In its conclusions of law as to Gulf, the court declared: The coverage provided by Gulf's policy was not avoided, defeated, excluded or impaired by item 7 of the Declarations (the Pilot Clause), or by Exclusion 6(d) or by Condition 24. The court determined that Gulf was liable to Macalco for loss of the aircraft in the sum of $32,750 and to the administratrix of the estate of the deceased pilot in the sum of $2,000 for funeral expenses. It also held Gulf responsible for the defense of the wrongful death actions and for any judgments entered thereon in favor of the suing widows. Likewise, Gulf was held liable to reimburse Macalco and the administratrix for expenses already incurred in defending the wrongful death suits. Finally, the court said: "The defense asserted by defendant Gulf based upon the alleged misrepresentation of the pilot status of Orville McDowell was not established by the proof. In addition, defendant Gulf was (and is) precluded, as a matter of law, from relying thereupon by reason of waiver arising from its sending notice of cancellation. Also, Handley-Adams, Inc., was an agent of Gulf in issuing the renewal policy. The knowledge of an agent is imputed to its principal. Handley knew or could have known of McDowell's certification. Gulf is, therefore, estopped from raising defenses concerning conditions of which it knew or should have known."

The trial court's conclusions of law as to Aetna were to the effect that its policy provided liability coverage for the aircraft crash with an underlying limit of $1,000,-000. However, if it should be determined on appeal that Gulf's policy was not applicable, then and in such event, Aetna's underlying limit would be $10,000 and Aetna would be responsible for defending the wrongful death suits.

■ As it affects appellate review of court tried cases, Rule 73.01, V.A.M.R., "is construed to mean that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong. The use of the words *de novo* and *clearly erroneous* is no longer appropriate in appellate review of cases under Rule 73.01." *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). The duty of an appellate court to give due regard to the opportunity of the trial court to have judged the credibility of witnesses as provided by Rule 73.01, has minor significance as to testimony proffered via depositions where the trial court has neither seen nor heard the witnesses, when there is no conflict of consequence in the testimony, and where the evidence is in writing and consists of documents. *Mission Insurance Company v. Ward*, 487 S.W.2d 449, 451[2] (Mo. banc 1972); *Delany v. St. Louis Union Trust Company*, 518 S.W.2d 704, 709[3] (Mo.App.1975).

Omitting citations, we quote what Swofford, J., had to say about the rules of construction to be followed in cases requiring the interpretation of insurance policies. "When an insurer seeks to escape liability on its policy solely upon the basis of a policy exclusion . . ., the burden of proof rests with the insurer to establish facts that make such exclusion applicable. . . . Restrictive or exclusionary clauses in an

insurance contract are to be strictly construed, and if ambiguous, a favorable construction for insured must be adopted. The contract terms and provisions must be viewed as a whole and a conclusion reached giving such contract a reasonable interpretation consonant with the apparent object and intent of the parties. . . . '. . . In general, policies should be given a reasonable construction in accordance with their terms and should be interpreted to provide coverage when reasonably possible to do so rather than to defeat it.' Ambiguous provisions in an insurance policy cannot avail as a policy defense. . . . These rules of construction stem from the deep-seated principle that courts do not favor forfeitures, particularly where they are the result of technical provisions in insurance contracts and forfeitures are never permitted unless the right is clearly established." *Allison v. National Insurance Underwriters,* 487 S.W.2d 257, 262[1–5] (Mo.App.1972).

### Gulf's Appeal

We perceive no ambiguity in or incompatibility between the provisions reposing in the Pilot Clause and Exclusion 6(d) in Gulf's policy which would render either inoperative or result in an overriding of the exclusion by the Pilot Clause.

Unlike the instant matter, aircraft insurance cases in which coverage was sustained involve express policy grants of coverage which overrode otherwise exclusionary provisions. E. g.: In *Fireman's Fund Insurance Co. v. McDaniel,* 187 F.Supp. 614 (N.D. Miss.1960), aff'd per curiam 289 F.2d 926 (5th Cir. 1961), the printed Pilot Clause had been typed over completely with a declaration of coverage when the craft was being flown by the named pilot "or any currently certified commercial pilot having [certain experience]." This, coupled with the negotiation context, including the truthful revelation of the named pilot's substandard certification, was held to create an express grant of coverage via the Pilot Clause which overrode an exclusion for certificate violation. It was said in *Insurance Co. of*

*North America v. Butte Aero Sales & Service,* 243 F.Supp. 276 (D.Mont.1965) that a typewritten endorsement stating that coverage would not be good "unless the pilot in command of the aircraft is [named pilot] or any other pilot who is properly certificated and rated for the flight" overcame the exclusion clause because otherwise the endorsement would have been unnecessary. Other cases upholding coverage do so on the theory that the insurer's tenuous defenses rested upon violations of FAA regulations which went beyond the strict wording of the policy requirements. *Roach v. Churchman,* 431 F.2d 849 (8th Cir. 1970); *Royal Indemnity Co. v. John F. Cawrse Lumber Co.,* 245 F.Supp. 707 (D.Or.1965). In addition to the foregoing are cases where coverage is afforded where flight rules are not involved and the facts do not match the exclusion advanced by the insurer. *Ranger Insurance Co. v. Mercantile Trust Co.,* 363 F.Supp. 795 (E.D.Mo.1973).

 No case has been found involving the precise combination of contract clauses seen here. However, aircraft insurance exclusionary clauses are usually upheld on their literal terms, even where the proscribed activity is found by reference to FAA regulations and where the pilot's name is typed into the blank provided in the Pilot Clause form. *Commercial Ins. Co. of Newark, N. J. v. Gonzalez,* 512 F.2d 1307 (1st Cir. 1975)—policy exclusion upheld requiring co-pilot for "night flight"; *Bequette v. National Ins. Underwriters, Inc.,* 429 F.2d 896 (9th Cir. 1970)—Pilot Clause very similar to instant case; pilot not certificated "for flight involved" because he was carrying passengers; *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.,* 283 F.2d 659 (9th Cir. 1960)—exclusion for flying when waiver required; crashed while carrying dynamite without waiver; *Globe Indemnity Company v. Hansen,* 231 F.2d 895 (8th Cir. 1956)—"aerobatic flight" exclusion enforced; *Bruce v. Lumbermens Mut. Cas. Co.,* 222 F.2d 642 (4th Cir. 1955)—exclusion when flying contrary to "any government regulation" violated when

crash occurred while engaged in aerobatic flight without parachutes; *Powell Valley Electric Cooperative, Inc. v. United States Aviation Underwriters, Inc.*, 179 F.Supp. 616 (W.D.Va.1959)—exclusion for instructional use upheld because student was in control at time of accident; *Glades Flying Club v. American Aviation & Marine Ins. Co.*, 235 So.2d 18 (Fla.App.1970)—pilot did not meet FAA regulations as required by Pilot Clause; *Farmers & Merchants Bank of Manchester v. Ranger Ins. Co.*, 125 Ga. App. 166, 186 S.E.2d 579 (1971)—student pilot carried passenger and thus violated exclusion which made reference to Pilot Clause requiring certificates and ratings "for the flight involved"; *Omaha Sky Divers Parachute Club, Inc. v. Ranger Ins. Co.*, 189 Neb. 610, 204 N.W.2d 162 (1973)—exclusion making reference to Pilot Clause upheld because pilot did not have medical certificate "for the flight involved"; *Baker v. Insurance Co. of North America*, 10 N.C. App. 605, 179 S.E.2d 892 (1971)—Pilot Clause required pilot to be "properly certificated and rated for the flight and the aircraft." Held, no coverage because of lack of medical certificate as required by FAA regulations.

◼ Respondents (Macalco and the administratrix) stress *Ranger Insurance Company v. Culberson*, 454 F.2d 857 (5th Cir. 1972), to justify the trial court's finding that "McDowell was properly certified and rated by FAA for the flight involved." This finding seems to us to be out of harmony with the finding and undisputed facts (1) that McDowell held a student pilot certificate—not a private pilot certificate, (2) that neither of the passengers were FAA certificated commercial instructor pilots and (3) that the flight was not made with the specific advance approval and under the supervision and control of an FAA certificated commercial instructor pilot. As we view it, the fallacy in relying on *Culberson* in light of the policy provisions in this case, lies in the fact that Ranger's policy extended coverage to "the following pilot(s) . . . while 'in flight' and while holding proper

pilot certificate(s) with appropriate ratings." The court said (Id. 864) that a proper certificate was a certificate that was effective until surrendered, suspended₀ or revoked. On the other hand, the Pilot Clause in Gulf's policy did not predicate coverage only on proper certificates with appropriate ratings, but made it a condition that the coverage applied "only while the aircraft is being operated by the following specified Pilot(s) while holding proper Certificate(s) and Rating(s) as required by the Federal Aviation Agency *for the flight involved.*" (Our emphasis). Thus, while McDowell's certificate and rating may have been proper for flights authorized for student pilots by FAA, it was not proper *for the flight involved* because, under FAA regulations, McDowell's student certification did not authorize him to act as a pilot in command of an aircraft that was carrying passengers. Exclusion 6(d) does not conflict with the Pilot Clause. The exclusion, recognizing the possibility of extension of coverage to flights made by student pilots, simply restricts coverage to such flights only if they be made "with the specific advance approval of and under the supervision and control of an F.A.A. Certificated Commercial Instructor Pilot."

Gulf's contract is distinguishable in several important respects with that involved in *Fireman's Fund Insurance Co. v. McDaniel*, supra, 187 F.Supp. 614, another case relied on by respondents. First, the exclusion clause in *McDaniel* conflicted with the Pilot Clause; no such conflict exists in Gulf's policy. Secondly, McDowell is a listed pilot only while holding a proper certificate and rating as required by the FAA for the flight involved; no such qualification was presented in *McDaniel*. There is no indication in Gulf's policy that the Pilot Clause was intended per se to extend coverage to McDowell which exceeded either its own limitation or those of Exclusion 6(d); in *McDaniel* the court interpreted the Pilot Clause as a per se extension of coverage to the named pilot without limitation as to certification. In the present case, McDowell's name was merely typed into the

blank provided with no indication this removed him from the requirement that he have the proper certificate and rating required by FAA for the flight involved.

Respondents note that "Student Pilot" is capitalized in Exclusion 6(d) and in the Pilot Clause following box (b) which, as we have observed, could be used to give limited coverage to student pilots if the flight conformed to the contractual limitations specified in the exclusion. We cannot follow or ingest the suggestion that by capitalizing "Student Pilot" it was intended that Exclusion 6(d) work as a limitation only to coverages affirmatively granted by the Pilot Clause to student pilots. We likewise reject the suggestion (not raised by brief) that since the trial court found McDowell had 500 hours of flight time, it might be concluded that McDowell was no longer a student pilot in a practical sense. Use of "Student Pilot" within the context of the Pilot Clause and Exclusion 6(d) would not convey this meaning to the ordinary reader. See *State ex rel. Prudential Ins. Co. of America v. Bland,* 353 Mo. 956, 963, 185 S.W.2d 654, 656[3] (1945); *Jordan v. United Equitable Life Ins. Co.,* 486 S.W.2d 664, 666–667[6–8] (Mo.App.1972); *Adams v. Covenant Security Ins. Co.,* 465 S.W.2d 32, 34[1] (Mo.App. 1971); *N. W. Electric Power Cooperative, Inc. v. American Motorists Ins. Co.,* 451 S.W.2d 356, 363–364[7] (Mo.App.1969). Moreover, merely having approximately 500 logged hours of flying time is not the only requirement or lore necessary to become certificated as a private pilot by FAA.

■ Respondents argue that Gulf may not defend against coverage either on Exclusion 6(d) or misrepresentation because Gulf in making coverage denial based it on breach of the Pilot Clause as McDowell was not properly rated and certificated for the flight involved, i. e., he was a student pilot carrying passengers at the time of the loss. This is based on the general rule that after an insurer has denied coverage on a specific ground, it may not thereafter deny coverage on a different ground. *Stone v. Waters,* 483 S.W.2d 639, 645[6] (Mo.App.

1972). However, it can be said that this argument is untimely. When respondents moved to strike those portions of Gulf's pleading containing the so-called additional new defenses, their only claim was that the paragraphs sought to be stricken failed "to state a legal defense" or were "inapplicable or unavailable to" Gulf. Neither in this overruled motion nor elsewhere does the record show respondents to have advanced this election theory. Respondents prevailed against all of the policy defenses at trial and for them now to raise a new theory supporting affirmance of their own favorable judgment below appears contrary to an established practice of appellate procedure. *Wantuck v. United Savings & Loan Ass'n,* 461 S.W.2d 692, 697[7] (Mo. banc 1971); *Huter v. Birk,* 439 S.W.2d 741, 745[9] (Mo. 1969); *MFA Mut. Ins. Co. v. Southwest Baptist College, Inc.,* 381 S.W.2d 797, 802–803[6] (Mo.1964); *Stevens v. Missouri Pacific R.R. Co.,* 355 S.W.2d 122, 127[1] (Mo. 1962); *Shelton v. M & A Electric Power Cooperative,* 451 S.W.2d 375, 380[8] (Mo. App.1970). In addition, the denial letter did "reserve . . . all other grounds for a coverage denial which may now or later appear." Such a reservation may or may not be automatically dispositive. 16A Appleman, Insurance Law and Practice § 9260, p. 680, n. 61.

■ While waiver or estoppel may bar a defense to a right the insured once had, such will not create a new coverage or rights not found in the contract. *Blew v. Conner,* 328 S.W.2d 626, 631[9] (Mo. banc 1959); *Locke Distrib. Co. v. Hartford Accident & Indem. Co.,* 407 S.W.2d 658, 671[6] (Mo.App.1966); *Weber v. Union Life Ins. Co.,* 394 S.W.2d 565, 569–570[5] (Mo.App. 1965); *Fernan v. Prudential Ins. Co. of America,* 162 S.W.2d 281, 286[10] (Mo.App. 1942); *Shepard v. Metropolitan Life Ins. Co.,* 231 Mo.App. 148, 150, 99 S.W.2d 144, 145[1] (1936); 16A Appleman, Insurance Law and Practice § 9090, p. 339. Furthermore, an examination of cases shows that estoppel, with some element of unfairness, lack of notice, or other detriment to the

insured, rather than voluntary waiver without such element, is the preferred theory when the insurer elects a policy defense. See *Aetna Casualty & Surety Co. v. Haas,* 422 S.W.2d 316, 321[8] (Mo.1968); *Morris v. Reed,* 510 S.W.2d 234, 240[9] (Mo.App.1974); 16A Appleman, Insurance Law and Practice § 9261, at p. 681. Respondents have known of all the defenses since the pleadings and hardly can now claim unfairness, lack of notice, etc. This especially applies to the defense on Exclusion 6(d) because the denial letter made it clear the breach was McDowell's student license. In substance, this is the same thing as the exclusion. But be the foregoing as it may, the breach of the Pilot Clause, contrary to the trial court's conclusion, did avoid, defeat and exclude coverage provided by Gulf's policy.

We next consider the court's finding that there was no causal connection shown between McDowell's certification as a student pilot and the crash or between the fact the flight was not made with the specific advance approval of and under the supervision and control of an FAA certificated commercial instructor pilot. It is our opinion that no proof of causal connection is necessary.

■■■■■ "Courts of high authority have held that in policies [phrased to exclude certain activities] there is no need of any causal nexus between the injury or death and the forbidden forms of conduct. While the proscribed activity continues, the insurance is suspended as if it had never been in force." *Travelers' Protective Ass'n of America v. Prinsen,* 291 U.S. 576, 582, 54 S.Ct. 502, 504, 78 L.Ed. 999, 1003 (1934). Likewise, in *Perkins v. Becker,* 236 Mo.App. 786, 792, 157 S.W.2d 550, 553 (1942), where insured's judgment creditor tried to escape an exclusion for underage drivers by arguing the loss was caused by bad brakes, the court stated: "A fair and reasonable construction of the language in the . . . exclusion clause is that *the policy is suspended during the time the automobile is being operated by a person under the age allowed by our statute,* and *the policy* being suspended during such time, there would be

no liability under the coverage clause . . . .." To like effect is *Schaefer v. Home Ins. Co.,* 239 Mo.App. 586, 592, 194 S.W.2d 718, 722[1, 2] (1946). Other cases repeat the theory that coverage is suspended whenever the operative facts of an exclusion come into being. The contract terms govern with no need to show some additional element [*Deutsch v. State Farm Mutual Automobile Insurance Co.,* 457 S.W.2d 823, 826 (Mo.App.1970); *General Motors Acceptance Corp. v. Western Fire Insurance Co.,* 457 S.W.2d 234, 237[3] (Mo. App.1970)], and such remains the rule so long as the exclusion is plain and unambiguous. The insurance law truism that policy construction favors coverage is without effect when clear language is used, whether in a restrictive clause or elsewhere in the policy. *State ex rel. Prudential Ins. Co. of America v. Shain,* 344 Mo. 623, 627, 127 S.W.2d 675, 676–677[2] (banc 1939); *Gabel v. Bird,* 422 S.W.2d 341, 344 (Mo.1967); *State Farm Mut. Auto. Ins. Co. v. Ward,* 340 S.W.2d 635, 639[3] (Mo.1960); *Jordan v. United Equitable Life Ins. Co.,* supra, 486 S.W.2d at 666–667[6–8]; *Galemore v. Haley,* 471 S.W.2d 518, 526 (Mo.App.1971); *Tickner v. Union Ins. Co.,* 425 S.W.2d 483, 486[3] (Mo.App.1968).

In aircraft insurance cases, many jurisdictions have expressly rejected any causation requirement while enforcing excluded uses. *Electron Mach. Corp. v. American Mercury Ins. Co.,* 297 F.2d 212, 214[3] (5th Cir. 1961); *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.,* supra, 283 F.2d at 664[4, 5]; *Globe Indem. Company v. Hansen,* supra, 231 F.2d at 897[1]; *Bruce v. Lumbermens Mut. Cas. Co.,* supra, 222 F.2d at 645[4, 5]; *Roberts v. Underwriters at Lloyds London,* 195 F.Supp. 168, 171[5] (D.Idaho 1961); *Powell Valley Electric Cooperative v. United States Aviation Underwriters, Inc.,* supra, 179 F.Supp. at 619[3]; *Baker v. Insurance Co. of North America,* supra, 179 S.E.2d at 894; Annot., 48 A.L. R.3d 1120, 1128–1129.

A case most similar to the present matter is reported in *Schepps Grocer Supply, Inc. v.*

*Ranger Ins. Co.,* 545 S.W.2d 13 (Tex.Civ. App.1976). In *Schepps,* Ranger's policy provided no coverage unless the named pilot possessed a multi-engine rating. At the time of the crash the named pilot had only a student's rating. The insured argued the pilot's lack of a multi-engine rating had no causal connection with the occurrence because, so an instructor testified, the pilot possessed the necessary skills to pass the FAA test for a multi-engine rating and the only reason the pilot did not possess such a rating was his inability to locate an FAA examiner to administer the test. The court rejected the argument and held proof of causal connection was unnecessary. "Ranger is entitled to require that [the named pilot] meet the qualifications in the policy before liability attaches. . . . To construe these policy provisions as [the insured] would have us do would be to ignore the clause 'providing he obtains a multi-engine rating,' and, in effect, would make a new contract between the parties." (Id. 16).

■ In this case the trial court's finding relative to causal connection would indicate this factor was material to its ultimate decision, otherwise the finding would have been an unlikely exercise in superfluity. We hold that proof of causal connection between McDowell's certification and rating as a student pilot and the casualty was unnecessary and that Gulf was entitled to extend coverage only while McDowell was holding the proper certificate and rating as required by FAA for the flight involved (Pilot Clause), and was entitled to exclude coverage unless the flight undertaken by a student pilot was with the specific advance approval of and under the supervision and control of an FAA certified commercial instructor pilot [Exclusion 6(d)].

What we have said and hold makes it unnecessary for us to rule and consider Gulf's remaining points relied on except as they may relate to Aetna's appeal which we consider next. As indicated by the foregoing, it is our opinion that the court nisi erred, in effect, by holding that Gulf's policy extended coverage (Pilot's Clause) to the flight involved or was effective [Exclusion 6(d)] in spite of the admitted and found facts that the flight was not made with the specific advance approval of nor under the control of an FAA certificated commercial instructor pilot. Consequently, as respects Gulf's appeal, the cause is reversed and remanded for entry of judgment in accordance with the views herein expressed.

### Aetna's Appeal

In "Section 1—Declarations" of Aetna's policy, is provided excess indemnity coverages of $1,000,000 Each Occurrence, $1,000,-000 Aggregate Annual and $10,000 Retained Limit. The Schedule of Underlying Insurance, inter alia, lists: Description—Aircraft Liability; Insurer—Gulf Ins. Co.; Limits of Liability or Amount of Insurance —$1,000,000.

Other portions of Aetna's policy pertinent here are as follows:

"Section 2. Insuring Agreements 2.1 Coverage. The company will indemnify the insured for ultimate net loss in excess of the applicable underlying limit which the insured shall become legally obligated to pay as damages because of A. Personal Injury, B. Property Damage, . . . to which this policy applies, caused by an occurrence anywhere in the world, . . ..

"Section 5. Definitions . . . 5.3 'applicable underlying limit' means (a) the amount of the applicable limits of liability of the policies of Underlying Insurance as stated in Section 1, or the amount stated in Section 1 as the Retained Limit, whichever is the greater, less the amount or amounts, if any, by which any aggregate limit so stated has been reduced solely by payment of claims in respect of personal injury, property damage . . . which occurs while this policy is in force, or (b) if the insurance afforded by such policies of Underlying Insurance is inapplicable to the occurrence, the amount stated in Section 1 as the Retained Limit; provided that the limits of liability of any such policy of Underlying Insurance shall be deemed applicable irrespective of (1) any defense which the

underlying insurer may assert because of the insured's failure to comply with any condition of the policy subsequent to an occurrence, . . ..

"Section 6. Conditions . . . 6.12 Maintenance of Underlying Insurance. Insurance as afforded by each policy of Underlying Insurance described in Section 1 shall be maintained in full effect during the currency of this policy, except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of personal injury, property damage . . . which occurs while this policy is in force. Failure of the named insured to comply with the foregoing shall not invalidate this policy but in the event of such failure the company shall be obligated under this policy only to the extent that it would have been obligated had the named insured complied therewith.

\* \* \* \* \* \*

"6.13 Representations. By acceptance of this policy the named insured agrees that the statements in Section 1 and in any subsequent notice relating to Underlying Insurance, which are offered as an inducement to the company to issue and continue this policy, are its agreements and representations, that this policy is issued and continued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the named insured and the company or any of its agents relating to this insurance."

Aetna initially asserts that if Gulf could avoid its policy for misrepresentation (Condition 24 of Gulf's policy) then Aetna could also avoid its policy for misrepresentation. However, as seen, supra, the trial court found that Gulf could not avoid its policy upon the alleged misrepresentation of McDowell's pilot status and we believe it was correct in this respect.

■ To avoid a policy an insurer must prove either breach of warranty made a part of the contract or misrepresentation in the inducement for the contract. *Piedmont & Arlington Life Insurance Co. v. Ewing,* 92 U.S. 377, 23 L.Ed. 610, 611–612 (1876); *Cohen v. Metropolitan Life Insurance Co.,*

444 S.W.2d 498, 504[3] (Mo.App.1969); *Templeton v. Standard Life Ins. Co.,* 235 Mo. App. 424, 430, 140 S.W.2d 726, 729[4] (1940). To whatever extent the cases recognize a difference between warranty and mere representation arising from an application for insurance, these general features emerge: (1) a warranty is intended to and does become a part of the contract [*Ettman v. Federal Life Ins. Co.,* 137 F.2d 121, 125[2] (8th Cir. 1943); *American Fire & Indemnity Co. v. Lancaster,* 286 F.Supp. 1011, 1014–1015[8–9] (E.D.Mo.1968), aff'd, 415 F.2d 1145 (8th Cir. 1969); *Grand Lodge, United Brothers of Friendship, etc. v. Massachusetts Bonding & Ins. Co.,* 324 Mo. 938, 948, 25 S.W.2d 783, 787[7] (banc 1930)], and (2) neither materiality nor intention is a factor in a strict warranty case. *Ettman,* supra, 137 F.2d at 125–126[2]; *Dixon v. Business Men's Assurance Co. of America,* 365 Mo. 580, 588, 285 S.W.2d 619, 625[5] (banc 1955); *Miller v. Plains Insurance Co.,* 409 S.W.2d 770, 774 (Mo.App.1966). Misrepresentations, on the other hand, are often spoken of in terms of materiality. *Miller,* supra, 409 S.W.2d at 773[4]; *Brinkoetter v. Pyramid Life Insurance Co.,* 377 S.W.2d 560, 563[4–6] (Mo.App.1964); *Bearden v. Countryside Casualty Co.,* 352 S.W.2d 701 (Mo. App.1961); *Toler v. Missouri Ins. Co.,* 243 S.W.2d 788 (Mo.App.1951). Gulf pleaded breach of warranty, but the alleged false statement does not appear anywhere in the policy. Condition 24 appears to exclude application statements absent from the policy and makes them a policy defense only if "the insured has . . . misrepresented any material fact." Therefore, Gulf's effort to avoid its policy, championed by Aetna, appears to involve a claimed material misrepresentation.

■ Ignoring for the moment the issue of Handley's agency, a misrepresentation depends not only upon falsity but upon what was known by the various parties. Generally, the knowledge of its agent is imputed to the insurer and if the agent is told the truth about a material matter by an innocent applicant, the insurer is bound by a false statement in the application. *American Fire & Indem. Co. v. Lancaster,*

supra, 286 F.Supp. at 1014[5–7]; *Voss v. American Mutual Liability Ins. Co.,* 341 S.W.2d 270, 278[8] (Mo.App.1960)· *Watkins v. Prudential Ins. Co. of America,* 236 Mo. App. 118, 125–126, 151 S.W.2d 462, 466[6, 7] (1941); *Russell v. Southeast Missouri Mut. Fire Ins. Co.,* 146 S.W.2d 674, 677[3] (Mo. App.1940); *Templeton v. Standard Life Ins. Co.,* supra, 235 Mo.App. at 430, 140 S.W.2d at 729[3]. The insurer may be bound not only when the agent knows the truth, but when he is in a position where he should know the truth from the circumstances. *Winger v. General American Life Ins. Co.,* 345 S.W.2d 170, 185[12] (Mo.1961); *Western Cas. & Sur. Co. of Fort Scott v. Wunderlich,* 447 S.W.2d 1, 4[1] (Mo.App.1969); *White v. Citizens Ins. Co. of New Jersey,* 355 S.W.2d 421, 424[3] (Mo.App.1962); *Bledsoe v. Farm Bureau Mut. Ins. Co.,* 341 S.W.2d 626, 632[8–10] (Mo.App.1960); *Loduca v. St. Paul Fire & Marine Ins. Co.,* 105 S.W.2d 1011, 1013[3] (Mo.App.1937). A similar result obtains if the agent fills out the application without questioning the applicant. *Farmers Mutual Fire & Lightning Ass'n v. La Vallee,* 501 S.W.2d 69, 74 (Mo.App.1973).

On the record the most that was shown was reliance and falsity. No evidence indicates McDowell ever saw or signed either application for Gulf's policy or that McDowell told Handley he was a private pilot. Neither did Handley state the application comports with what he was told. Gulf at the minimum probably would have to show, assuming Handley was its agent, the false statement in the application was traceable to Macalco, and that was not done. "The knowledge of the agent with respect to the application and the questions and answers appearing and made thereon, as to whether such questions were in fact asked and such answers were in fact made by the insured or as to the truthfulness or untruthfulness thereof, is imputed to the [insurer]." *Sappington v. Central Mut. Ins. Ass'n,* 229 Mo.App. 222, 234, 77 S.W.2d 140, 147[8, 9] (1934).

The trial court held that Handley was agent for Gulf, not Macalco. Gulf challenged this by saying Handley was Macal-co's agent, or, because he was on Macalco's board of directors, he was a dual agent serving two masters. Obviously this challenge is made to avoid imputing to Gulf what Handley knew or should have known and to establish a connection between the application's false statement and the insured. In *Smith v. Ohio Millers' Mutual Fire Ins. Co.,* 325 Mo. 51, 65, 26 S.W.2d 962, 968 (banc 1930), it was stated that the burden of proving dual agency was on the insurer, and on the first appeal in the same case [320 Mo. 146, 169, 6 S.W.2d 920, 928 (banc 1928)] the court observed that duality was a fact question "largely dependent on the intention of the parties." Moreover, and contrary to Gulf's suggestion, agency may not be necessarily exclusive as to one party or the other. "The same person may act for the different principals in separate matters in which their interests are not conflicting and his duties not inconsistent. · · · Whether in a particular case or particular matter one acts as agent for the company or for insured depends upon the intention of the parties, which is to be determined from the facts and circumstances of the case." *Meyers v. State Farm Life Insurance Co.,* 416 S.W.2d 10, 16[4–6] (Mo.App.1967).

The evidence is that Handley was a director of Macalco and a "licensed agent" for Gulf, that he handled most of Macalco's insurance requirements, that someone at Macalco contacted him regarding airplane insurance, that he was authorized to sign the first application and that the renewal application was processed through his office. Gulf has shown neither conflicts in Handley's roles nor that his insurance functions were subordinate or related to his directorship. It is not uncommon for an individual or business concern to place the handling of his or its insurance needs with a friend or associate in some undertaking. Such friendship and association alone does not establish an overriding self-interest on the part of the agent obviating complete faithfulness to the insurer. There was no evidence that Handley was a Macalco stockholder or otherwise had a pecuniary interest in the corporation which would result in an

interest adverse to Gulf. Cf. *Riverside Development Co. v. Hartford Fire Ins. Co.,* 105 Miss. 184, 62 So. 169 (1913); 16 Appleman, Insurance Law & Practice § 8737, at p. 323.

We opine, therefore, the conclusion of the trial court that Handley was Gulf's agent and that Gulf could not avoid the policy because of the misrepresentation contained in the application had substantial evidence in support thereof.

■ What has just been said takes care of Aetna's first point on appeal and its anomalous position in arguing Gulf's policy was void ab initio. As seen, supra, we have not held that Gulf's policy was never effective, only that it was suspended during the time the aircraft was being piloted by a person not properly certificated and rated for the flight involved or was being flown by a student pilot when the flight was made without the specific advance approval of and under the supervision and control of an FAA certificated commercial instructor pilot.

The second issue in Aetna's appeal is whether the trial court erred in concluding that if on appeal Gulf's policy was found inapplicable to the occurrence (which we have done) the retained limit of $10,000 would govern Aetna's liability.

The apparent distinction between Aetna's Definition 5.3 and Condition 6.12 is underlying insurance "inapplicable to the occurrence" as opposed to that not "maintained in full effect." To paraphrase, the interlocking provisions are as follows: Aetna will indemnify Macalco for damages it is obligated to pay above $1,000,000, or above $10,000 if Gulf's coverage is inapplicable to the losses resulting from the crash; but if Gulf's policy has not been maintained, then the $1,000,000 retention applies nonetheless. The latter condition would apply in case of a lapse or some situation arising between the time of obtaining Aetna's umbrella policy and the time of loss resulting in diminution or elimination of the effect Gulf's underlying insurance had at the earlier time.

As Gulf's appeal has been disposed of on the basis that its policy was merely suspended at the time of the occurrence and

not because it was void ab initio, then it follows that there was never any change in the extent or character of coverage under Gulf's policy during the period in question. The underlying coverage was merely "inapplicable to the occurrence." McDowell was not the only named pilot in Gulf's policy, and he could have flown within the zone of protection by obtaining a private certification or by flying with the specific advance approval of and under the supervision and control of an FAA certificated commercial instructor pilot. Therefore, Macalco had underlying insurance, and maintained that same insurance, despite the fact it did not cover the particular occurrence in question.

Albeit we agree with the trial court's ruling that the $10,000 retained limit would govern Aetna's liability if Gulf's policy was found inapplicable upon appeal, it is also necessary that we remand this portion of the appeal so that proper judgment as it affects both Gulf and Aetna can be entered in the cause consistent with the views and ruling herein expressed and contained.

All concur.