Paul L. **HEINEMAN**, Appellant,

v.

Lou A. Charno **HEINEMAN**, Respondent.

Paul L. **HEINEMAN**, Respondent,

v.

Lou A. Charno **HEINEMAN**, Appellant.

Nos. WD 44507, WD 44544.

Missouri Court of Appeals, Western District.

July 28, 1992.

Howard E. Bodney, Overland Park, Kan., for appellant.

Thomas M. Moore, David M. Harding, Kansas City, for respondent.

Before HANNA, P.J., and FENNER and ULRICH, JJ.

FENNER, Judge.

This appeal involves the disposition, by the trial court on remand, of an account known as an Earned and Uncollected Account (E and U), a portion of which was awarded to wife, respondent and cross-appellant, pursuant to a dissolution of her marriage to husband, appellant and cross-respondent.

A summary of the background which once again brings the parties before this court is necessary to aid in the understanding of the issues presented on appeal. Some of the facts are borrowed from the opinion of this court in the prior appeal. *See, Heineman v. Heineman,* 768 S.W.2d 130, 135 (Mo.App.1989).

The marriage of the parties was dissolved December 30, 1986. Prior to their marriage, the parties had entered into an antenuptial agreement wherein wife waived any maintenance, support or alimony, with the exception of one-half the amount by which husband's E and U Account should increase during the marriage. Subsequently, on June 23, 1987, the trial court entered a final decree which disposed of the marital property among other issues. That decree was appealed to this court. The case was remanded by this court for further hearings regarding the E and U Account, which is once again at issue in the present appeal.

The E and U Account is a deferred income profit sharing retirement account maintained by husband's engineering firm for partners of the firm. The account is described in Paragraph 8 of the antenuptial agreement as follows:

At the present time [husband] is a partner in the engineering firm of Howard Needles Tammen and Bergendoff. Under the provisions of the partnership agreement of that firm (as said partnership agreements are modified annually), it is presently provided that an account is set up on the books of the partnership which refers to the earned and uncollected profits of certain contracts executed and performed by the partnership, in whole or in part, during the years in which each of the various partners were active partners in such firm. It is recognized that by subsequent amendment of the partnership agreement, that account may be abolished in its entirety or may be substantially modified or reduced. It is further recognized that, even without the modification of the partnership agreements, no partner has a vested interest in such account until he retires or dies as an active or retired partner and until he actually receives in cash the amount of earned and uncollected profits referred to on said account. It is recognized that the figure which appears on said account is merely an estimate and is subject to material revision depending on the profitability of various contracts and further that in any given year the partnership may withhold up to 25% of the annual amount owing to any retired partner or the estate of a deceased partner on account of such payments. For all of these reasons, it is agreed by the parties that said account, and the amounts of money referred to on said account, do not constitute any kind of property whatsoever for this Agreement except and unless and until: (a) the amount of such account as reflected on the records of said partnership shall increase over and above the figure as reflected on the attached Exhibit A which is computed as of April 28, 1979, and the amount of such increase shall be treated as hereinafter set out; and (b) until such account results in actual cash being received by [husband] after retirement or by his estate after his death, which such cash upon receipt during the marriage shall be considered to be and shall become marital property. . . .

With regard to the consequences of a divorce, Paragraph 9 of the antenuptial agreement provides, in pertinent part:

To the extent that the E & U Account has increased, if any, at such time, as compared to its amount at the time of

the execution of this Agreement, [husband] agrees to pay support payments to [wife] in an amount equal to one-half of such increase; said payments will be payable over the remaining life of the E & U Account, if said life is not less than three years, but otherwise such amount will be paid over a period of three years;

\*     \*     \*     \*     \*     \*

It is recognized that the E & U Account is only payable (without interest) over a period of ten years after death or retirement of a partner, and is unfunded and payable only out of the earnings of the said partnership. Any support payments to be made to [wife] in an amount tied to the amount of the increase of such account would only be payable to her as and when same would be otherwise distributable to [husband] by the partnership....

The E and U Account was valued in the antenuptial agreement at $1,537,280 as of April 28, 1979. The trial court fixed the closing date for valuation of the account as December 31, 1984, at which time the account had grown to $2,566,534.62, an increase of $1,029,284.62.

The dissolution decree, as previously stated, was entered December 30, 1986. Husband retired on December 31, 1986, at which time the E and U Account was vested, subject to annual adjustments in the account and subject to the sufficiency of the engineering firm's profits for payment. Thus, husband became entitled to the payment of the amount of his share of the E and U Account over a term of 10 years, if the earnings of the firm were sufficient.

The trial court's June 23, 1987, judgment in dissolution ordered in substance, that wife was to receive a percentage of the cash payments to husband from the E and U Account in the ratio which the April 28, 1979 to December 31, 1984, increase in the E and U Account bore to the total of the account on December 31, 1984. The result was a ratio of 40.104%, one-half of which, or 20.052%, would be payable to the wife. At the time of the June 23, 1987 final decree, however, husband was receiving payments based upon the December 31,

1985 balance and not the December 31, 1986 balance, as the latter balance had not been established at that time. Therefore, the decree provided for recomputation of the percentage after the year end 1986 adjustments had been made to the account. The decree also provided that if husband were required to refund any part of the cash payment from the E and U Account, the wife was to repay ratably.

In the prior appeal, husband raised two issues which are relevant to this appeal. He argued that it was error for the court to rule that wife should receive her portion of his E and U advances when received by him even though the right to retain them would not be settled until computations of partnership profits and E and U balances were completed at the end of the year. It was husband's position that payments to wife should not be made until his account was settled and fixed year by year and subject to no further adjustments.

In rejecting husband's argument this court found that "[i]t is frequently necessary in the disposition of retirement benefits in dissolution cases for future calculations and recomputations to be made." *Heineman*, 768 S.W.2d at 135. (citations omitted). This court noted further that "[i]t is permissible, and perhaps better, to place wife upon the same footing as husband with respect to the time and manner of payments." *Id.*

Husband also argued that wife should not be entitled to a judgment for a specific sum of money. This court agreed. The original decree awarded to wife judgment in "the aggregate amount of $514,642.31, said amount being 50 percent of $1,029,-284.62, which is the increase in [husband's] E and U account between April 28, 1979 and December 31, 1984." In holding that wife was not entitled to a specific sum of money, this court stated that wife was entitled to a percentage of the amount received by husband from the E and U Account, and that amount cannot be known in advance. *Heineman*, 768 S.W.2d at 135, 136. This court further stated that "[t]he formula may entitle wife to more or less than the specific amount by which the E and U

account grew during the marriage." *Id.* at 136. On remand, this court directed the trial court to eliminate from the decree the language giving wife a judgment against husband for maintenance in a specific sum of money.

In the present appeal, husband alleges that the trial court erred in failing to utilize annually revised E and U estimates to arrive at an interim percentage and to order that the amount of wife's support be adjusted by subsequent annual revisions of the E and U Account estimates until the final amount of support is calculated after the tenth year of the E and U payments.

Initially it is observed, as wife points out in her brief, that pursuant to the doctrine of "law of the case," a former adjudication is conclusive as to all questions raised directly and passed upon and is also the law of the case as to matters which arose prior to the first appeal and to matters which might have been raised thereon but were not. *Steen v. Colombo,* 799 S.W.2d 169, 174 (Mo.App.1990).

The original decree of June 23, 1987, as previously stated, provided for recomputation of the percentage payable to wife after the 1986 year end adjustments had been made to the account. In the prior appeal, this provision was not challenged by husband and in fact, this court commented that "[h]usband does not attack the court's formula or its calculations ..., tacitly conceding that the court has read the antenuptial agreement correctly." *Heineman,* 768 S.W.2d at 134. On remand, the trial court did, among other things, recalculate the percentage due wife based upon the 1986 year end adjustments and entered its amended order accordingly, finding wife's interests in the E and U payments made to husband to equal 14.38984% of each gross payment due to husband.

Now husband seeks to have this court interpret the June 23, 1987 decree to require a recomputation each year, arguing that the most reasonable inference to be drawn from the fact that the court ordered recomputation when the 1986 year end adjustments became available was that recomputation would likewise be required in subsequent years because the engineering firm annually recomputes his E and U Account. This court disagrees.

Clearly this issue could have been raised by husband in the prior appeal. In the final decree of June 23, 1987, the trial court found:

> [T]hat as of such date as Petitioner's E & U payment credits include the credit for 1985 and 1986, a recalculation will be necessary to determine the ratio of Respondent's interest in Petitioner's E & U *for all remaining years;* .... (emphasis added).

Husband subsequently appealed the decree of June 23, 1987, raising several issues, none of which included a challenge to the above provision. To allow husband to now come before this court and raise an issue which should have been raised in the prior appeal would allow him to have a second bite of the apple contrary to the well established "law of the case" doctrine.

Even had husband raised the issue he now brings before this court, a reading of the provision previously set forth indicates no ambiguity and clearly states that the recalculation of the ratio of wife's interest in the E and U Account in 1986 will be "for all remaining years." Thus, there is no need to go further and certainly no inference to be drawn that the court intended a recalculation to take place each year when the engineering firm recomputes the E and U Account. Point one is denied.

In point two, husband argues that the trial court erred in allowing interest to wife based upon the E and U Account increase.

Husband, apparently mistakenly, believes that the trial court, on remand, awarded interest at the rate of 9% on its judgment with regard to the E and U Account. While the trial court did award interest on the judgment, a topic taken up on wife's cross-appeal, there is nothing to indicate that the interest should apply to payments due wife from the E and U Account.

The trial court did provide that wife would have interest on sums due her from the E and U payment to commence seven

days after the payments from the account became due. That portion is not challenged by husband. Therefore, husband's second point misinterprets the interest provision and is denied.

In her cross-appeal, wife argues that the trial court erred in awarding husband prejudgment interest from June 23, 1987, the date of the first judgment, on the amount determined on remand to be due him in lieu of property. She alleges this award was erroneous because it did not conform to the mandate of this court in the prior appeal and because the amount ultimately adjudged to be due from her was an unliquidated amount not readily ascertainable by computation according to a recognized standard.

Husband argues that because the trial court entered numerous judgments with respect to the division of property, awarding property to one or the other of the parties with corresponding judgments for money to be credited to the parties, that the subsequent judgment entered on remand was simply a redistributing of credits, which resulted in a larger amount of credits to him. It is husband's position that all of the money judgments awarding credit to him became final and each separate judgment awarding a credit was entitled to have interest run on the amount of the credit from the June 23, 1987, date of the entry of the first judgment.

Husband also argues that when this court reversed the decision of the trial court in *Heineman v. Heineman*, 768 S.W.2d 130 (Mo.App.1989), with respect to the division of property, in effect this court modified the trial court's judgment in lieu of property by requiring the trial court to enter a new judgment reflecting the changes brought about by the reversal. To support his position, husband cites the case of *Ohlendorf v. Feinstein*, 670 S.W.2d 930, 936 (Mo.App.1984), for the proposition that when a judgment is modified on appeal, the new sum draws interest from the date of the original order and not from the date of the new judgment.

Husband's argument is misplaced. The first judgment in lieu of property was entered June 23, 1987, in favor of wife. In the prior appeal this court, in reversing the judgment, remanded the case to the trial court with the direction to enter a "new judgment." *Heineman*, 768 S.W.2d at 142. This court did not, contrary to husband's argument, direct that the trial court's decree of June 23, 1987, be modified. After the case was remanded by this court, the trial court held further evidentiary hearings and a new judgment in lieu of property was entered February 7, 1991, in favor of husband.

Prejudgment interest is only appropriate where the amount for which a defendant may be liable is liquidated or readily ascertainable according to a recognized standard. *Ohlendorf*, 670 S.W.2d at 935. The amount due herein was not liquidated prior to the second judgment and neither party was liable to the other for any amount until that determination. Further, pursuant to this court's direction in the prior appeal, a new judgment was entered by the trial court. The original judgment was not modified as the party for whom judgment was originally entered (wife) was changed and a new judgment for husband was entered accordingly.

The trial court erroneously declared that interest would run on the new judgment from the date of the June 23, 1987 judgment. That provision, therefore, must be reversed.

The cause is remanded and the trial court is directed to modify the interest provision of the judgment entered February 7, 1991. The provision should state that interest on the judgment for husband is to commence February 7, 1991.

The judgment is affirmed in part; reversed and cause remanded in part.

All concur.